# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL SNYDER and JAIME SNYDER, his wife, on their own and on behalf of their minor son, J.S., | ) ) ) ) ) | Civil Action No. 11-1309 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SUMMERSET NEIGHBORHOOD ASSOCIATION, a Pennsylvania Nonprofit Corporation, and SUMMERSET DESIGN REVIEW BOARD, | ) ) ) ) ) ) ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, Daniel Snyder and Jaime Snyder, his wife, on their own and on behalf of their minor son, J.S. (hereinafter collectively referred to as, "the Snyders" or "Plaintiffs"), pursuant to 42 U.S.C. § 3613, hereby move this Court to issue a preliminary injunction: (a) enjoining Defendants from relying on a neighborhood design code to prevent Plaintiffs from installing a retractable awning atop their second-floor porch in order to shield their disabled minor son from the harmful effects of direct sunlight; (b) directing Defendants to permit the immediate construction of said awning; and (c) requiring Defendants to reimburse Plaintiffs for their attorneys' fees, costs of suit, emotional harm, inconvenience, harassment and humiliation, and sums to account for the deprivation of J.S.'s constitutionally-guaranteed rights. In support of this Motion, Plaintiffs state as follows:

{S0330970.2}

1. Plaintiffs have filed a Complaint in this matter, the allegations of which are incorporated by reference in this Motion. (See Docket Entry No. 1).

2. This matter involves a civil rights action brought under the Federal Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 §§ 3601-3631 ("FHA") and the Pittsburgh, Pennsylvania Code of Ordinances, Title 6, Art. V., Chap. 659.03, to address the discriminatory actions of the Summerset Neighborhood Association ("SNA") and the Summerset Design Review Board ("DRB") (hereinafter collectively referred to as, "Defendants") against the Snyders and their disabled minor son, J.S.

3. Defendants violated the FHA by: (a) refusing to grant a reasonable accommodation to permit the Snyders' disabled son J.S. an equal opportunity to use and enjoy his family's entire residence located within the neighborhood of Summerset at Frick Park ("Summerset"); and (b) interpreting and applying the Summerset Design Code to prevent the installation of an awning, and taking other action that prevents J.S. from using and enjoying his family's residence.

4. The Snyders bought a home in Summerset in 2007, and in 2010, their second son, J.S., was born.

5. J.S. was born with congenital glaucoma in his right eye – and as a result of which his vision is severely impaired, his right pupil is in a constant state of dilation, and he cannot be exposed to, and has extreme sensitivity to, direct sunlight.

6. Soon after his birth, J.S. was also diagnosed with a genetic disorder, Neurofibromatosis Type 1 ("NF-1"), which is a life-threatening disease that causes tumors, sometimes cancerous, to grow on nerve endings within J.S.'s body. J.S.'s NF-1 does not

contribute to his vision impairment or light sensitivity, but because NF-1 is extraordinarily rare, it is not clear to J.S.'s doctors whether his congenital glaucoma is related to his NF-1 diagnosis.

7. The Snyders' son J.S. is "handicapped," as that term is defined in 42 U.S.C. § 3602(h).

8. To accommodate J.S.'s extreme sensitivity to sunlight, J.S. remains indoors during most daylight hours, wears sunglasses and/or a wide-brimmed hat while outdoors, and the windows in the Snyders' family are tinted to block out as much sunlight as possible.

9. The parents' bedroom in the home and the large balcony off of the master bedroom on the second-floor of the Snyders' home face south, and as a result, both areas are filled with direct sunlight for many hours on sunny days.

10. In the Spring of 2011, J.S. began to walk and Snyders wanted J.S. to be able to use and enjoy the family's master bedroom without first needing to ensure that the room's black-out blinds were closed. Likewise, the Snyders wanted J.S. to be able to play on the expansive, albeit contained, second-floor porch during the day, especially since he was not otherwise able to freely play outside or go on outdoor walks due to his disability.

11. Based on these concerns, the Snyders investigated changes they could make to their residence that would provide substantial shade from sunlight to both the parents' bedroom and the second-floor porch to enable J.S. to use and enjoy those areas. In addition to putting black-out blinds on windows in their home, the Snyders placed a porch swing covered by an umbrella on their second-floor porch, but it did not provide adequate shade for the porch or the parents' bedroom.

12. On April 21, 2011, the Snyders, requested permission from the DRB to install a retractable armless awning atop the second floor porch. (See. Doc. Entry No. 1, Exh. A).

13. The Snyders explained to Defendants that they desired to erect the awning for the benefit of their son who had congenital glaucoma and could not be exposed to, and had extreme sensitivity to, direct sunlight. As part of their request, the Snyders attached two separate notes from J.S.'s physicians that explained their son's disability and his sensitivity to sunlight. (See Doc. Entry No. 1. Exhs. A and B).

14. At the time of the Snyders' request, there was nothing contained in the Summerset Declaration or the Summerset Design Code that restricted the installation of awnings on homes in the neighborhood. In fact, the Snyders were aware of at least two other Summerset residents that had installed retractable awnings, identical to the one requested by the Snyders, on their homes. Those awnings were installed on the side of those residents' houses, although at least one of those awnings is visible while approaching the front of the house from the street.

15. Defendants denied the Snyders' request for the installation of a retractable awning, stating that the DRB would only consider, "…[a] modification to the building that is keeping with the architecture and permanent nature… similar to a pergola element with a low slope metal roofing or a pitched roof to appear as though it was part of the house since its initial construction." (See Doc. Entry No. 1, Exh. C).

16. According to the SNA, the Snyders' request for an awning was denied in order to preserve, "the unique and quality architectural theme of Summerset [that] is central to the preservation of and appreciation in property values of all residents in Summerset." (See Doc. Entry No. 1, Exh. D).

17. Upon notice of Defendants' denial of their request for an awning, the Snyders made repeated demands that Defendants reconsider their denial to benefit J.S., and, on June 13,

2011, the Snyders filed a Complaint of disability discrimination with the City of Pittsburgh Commission on Human Relations ("PCHR").

18. Soon after the Snyders filed their disability discrimination claim with the PCHR, on June 28, 2011, the Executive Board of the SNA passed an amendment to the Summerset Design Code that prohibited the erection of awnings on the front of homes. (See Doc. 1, Exh. E).

19. Even though the amendment to Summerset Design Code § 5.1 was enacted two months after the Snyders' request for accommodation, Defendants attempted to apply the amendment to retroactively apply to the Snyders' request for an awning on their residence.

20. Defendants further threatened to initiate proceedings to obtain a temporary restraining order against the Snyders if they took steps in furtherance of erecting a retractable awning.

21. For several months, the PCHR conducted an investigation into the Snyders' Complaint.

22. Contemporaneous with the PCHR investigation, the Snyders continued to plead with Defendants to consider their awning request. Instead, Defendants directed the Snyders to consider alternatives for shade, including: (a) a pergola structure; (b) a portable, large, high quality umbrella (or umbrellas) to shade the second-floor porch; (c) a permanent extension to the roof over their second-floor porch; (d) the enclosure of their second-floor porch with a permanent sunroom structure; or (e) the use of other outdoor spaces, like a concrete slab area beside their garage.

23. The Snyders spent their own money and approximately four (4) months exploring the alternatives dictated by Defendants, and, with respect to each item and for varying reasons,

explained to Defendants why the alternative was unsafe, oppressively expensive, and impractical.

24. On September 14, 2011, upon conclusion of the PCHR investigation, the PCHR determined that the evidence it considered supported the Snyders' allegation of discrimination by Defendants. (See Doc. 1, Exh. H).

25. During the course of negotiations with Defendants, the Snyders have been approached by several neighbors who have openly suggested that the Snyders' "public fight" reflect poorly on the neighborhood. Several other neighbors whom the Snyders previously socialized with no longer return the Snyders' phone calls, text messages or social invitations.

26. In addition to suffering from congenital glaucoma, J.S. also has NF-1, which is a life-threatening genetic disease. It is believed and therefore averred that at least some of the Defendants are aware of J.S.'s NF-1 diagnosis and understand that J.S. may not have a typical lifespan.

27. With each day that passes, Defendants continue to violate J.S.'s federally-protected civil rights by improperly relying on the Summerset Declaration and Design Code to prohibit the installation of an awning thereby precluding J.S. from using and enjoying his entire residence.

28. Defendants have violated the clear mandates of the FHA in refusing to make reasonable accommodations to their rules, policies, and practices that are necessary to afford J.S. with an equal opportunity to use and enjoy their dwelling.

29. On repeated occasions, Defendants were provided with information that described J.S.'s disability and were likewise informed that Plaintiffs' request to install the awning on their home was to accommodate J.S.'s disability.

30. There is no reasonable basis or bona fide business interest to deny Plaintiffs' request for accommodation. There was no prohibition against awnings on the front of homes in Summerset prior to the Snyders' request to install an awning for their disabled son; in fact, two residences already had retractable awnings in place.

31. Defendants only response to the Snyders' request was to suggest untenable, impractical, and/or unreasonably expensive alternatives to the erection of a retractable awning. One of the untenable alternatives suggested by Defendants was the use of a "portable, large, high quality umbrella (or umbrellas)," which has virtually the same outward appearance as an awning. (See Doc. Entry No. 1, Exh. D).

32. Defendants have shown callous disregard for Plaintiffs' request, and have needlessly prolonged J.S.'s access to a reasonable accommodation.

33. It has been approximately six (6) months since Plaintiffs requested permission from Defendants to install a retractable awning above their second-floor porch in order to provide shade for their disabled son to use and enjoy the master bedroom and porch in their residence.

34. As a direct result of Defendants' unreasonable and continued refusal to permit the erection of an awning, J.S. has been unable to use and enjoy the master bedroom and porch during most of the Spring, Summer, and now Fall months of 2011.

35. Until Defendants issue the required approvals to the Snyders, the Snyders cannot commence the necessary renovations for J.S. to be able to use and enjoy his family's entire home.

36. The Snyders and J.S. have, and will continue to, suffer emotional harm, inconvenience, harassment and humiliation, attorneys' fees, time and expenses, and the deprivation of constitutionally-guaranteed rights as a result of Defendants' actions.

37. Based on the foregoing, there is a strong likelihood that Plaintiffs will prevail on the merits of this case at trial.

38. The FHA, at 42 U.S.C. § 3613(c)(1), specifically authorizes the Court to grant the following injunctive relief:

> (1) In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, **as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)**.

(emphasis added).

39. It is respectfully requested that this Court issue a preliminary injunction enjoining Defendants from relying on the Summerset Declaration and Design Code to prevent Plaintiffs from installing a retractable awning atop their second-floor porch in order to shield their disabled minor son from the harmful effects of direct sunlight, and from enforcing the SNA Declaration and Design Code in a discriminatory manner that prevents J.S. from living in and enjoying his family's entire residential home in Summerset at Frick Park.

WHEREFORE, for these reasons, as well as those set forth in Plaintiffs' Complaint, Plaintiffs respectfully request that this Court enter an Order pursuant to 42 U.S.C. § 3613, as follows:

I. For a preliminary injunction, and permanent injunction thereafter, enjoining Defendants from relying on a neighborhood design code to prevent Plaintiffs from installing a

retractable awning atop their second-floor porch in order to shield their disabled minor son from the harmful effects of direct sunlight;

  II.  Directing Defendants to permit the immediate construction of said awning; and

  III.  Requiring Defendants to reimburse Plaintiffs for their attorneys' fees, costs of suit, emotional harm, inconvenience, harassment and humiliation, and sums to account for the deprivation of J.S.'s constitutionally-guaranteed rights.

  IV.  For such other and further relief as the Court deems just and equitable.

October 14, 2011              By: */s/ Beverly A. Block*
                      James R. Hankle, Esquire
                      PA I.D. No. 36019
                      Email: jrh@sgkpc.com
                      Beverly A. Block, Esquire
                      Email: bab@sgkpc.com
                      PA I.D. No. 93406
                      *Attorneys for Plaintiffs, Jaime and Daniel Snyder and J.S. Snyder*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** was electronically-filed and copies were arranged to be served **VIA HAND DELIVERY** on the below individuals, this 14th day of October, 2011:

Joshua M. Farber, Esq.
Thorp Reed & Armstrong, LLP
One Oxford Centre, 14th Fl. | 301 Grant Street
Pittsburgh, PA 15219
Chair of the Executive Board for the Summerset Neighborhood Association


Craig Dunham
Ewart Building
925 Liberty Avenue, 8th Floor
Pittsburgh, PA 15222
Chair, Summerset Design Review Board



*/s/ Beverly A. Block*
Beverly A. Block